1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE**

| | |
|---|---|
| TEE TURTLE, LLC, a Missouri limited liability company, | CASE No. 2:21-CV-0094-TOR |
| Plaintiff, | **PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** |
| v. | |
| BURAK ALBAYRAK, an individual, | |
| Defendant. | |

BEFORE THE COURT is Plaintiff Tee Turtle, LLC's ("Tee Turtle") and Defendant Burak Albayrak's ("Defendant") Proposed Permanent Injunction Order and Final Judgment (ECF No. 4) and Motion to Expedite (ECF No. 5). Having considered the parties' submission, including the Complaint and Declaration of Mr. Ramy Badie, and being fully advised on this matter, the Court now enters this Permanent Injunction and Final Judgment Order based on the following facts set forth below, which are agreed to by the parties.

Each signatory to the Permanent Injunction and Final Judgment certified that he or she is fully authorized, either individually or by the party or parties he or she

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -1**

represents, to stipulate to the Permanent Injunction and Final Judgment and to enter into and execute the Permanent Injunction and Final Judgment on behalf of the party or parties represented and legally bind that party or parties. Defendant also acknowledges that he was encouraged in writing by Plaintiff's undersigned counsel to retain independent counsel to review the Permanent Injunction Order and Final Judgment, and that he voluntarily declined to do so. The parties represent that they have read, understand and agree to all of the terms and conditions of the Permanent Injunction Order and Final Judgment.

## I.    FACTUAL BACKGROUND AND BASIS FOR PERMANENT INJUNCTION

Defendant operates kiosks in the Northtown Mall in Spokane, Washington, and the Spokane Valley Mall in Spokane Valley, Washington, selling reversible plush toys (hereinafter the "Moody Octopus Infringing Plushies" or "Infringing Plushies") that are virtually identical copies of Reversible Octopus Plushies designed and authored by Tee Turtle.

Defendant does not dispute that Tee Turtle owns a valid copyright registration covering the work embodied in its Reversible Octopus Plushies. Defendant also does not dispute that the distinctive trade dress of the Reversible Octopus Plushies has acquired secondary meaning. Defendant further does not dispute that Defendant's Infringing Plushies infringe both Tee Turtle's copyright and Tee Turtle's trade dress.

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -2

The parties, wishing to avoid the expense, uncertainty, inconvenience, and other burdens of litigating the above-entitled action, agreed to the settlement of their dispute and stipulated to the entry of this Permanent Injunction Order and Final Judgment.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of the parties under the Copyright Act, 17 U.S.C § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*  Supplemental jurisdiction over the state law claims is vested in this Court under 28 U.S.C. § 1367.  The parties agree that they are subject to the Court's jurisdiction and that venue in this District is proper.

## III.    FINDINGS OF FACT

The following facts are stipulated to by the parties and accepted by the Court:

### A.    Tee Turtle's Products and Rights

1.    Tee Turtle designs and markets various consumer goods, including reversible plush toys, including Reversible Octopus Plushies as set forth in the Complaint in this action.  Tee Turtle began marketing the Reversible Octopus Plushies in 2017.  (Badie Decl. ¶ 3.)

2.    Tee Turtle owns a federal copyright registration protecting the work of authorship embodied in the Reversible Octopus Plushies.  Registration Number VA

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -3

2-103-871, which has an effective date of September 21, 2017.   The copyright application for this registration contained a "deposit copy" of the work of authorship as follows:



(*Id.* ¶ 4.)

3.     The Certificate of Registration associated with Number VA 2-103-871 is *prima facie* evidence of the validity of Tee Turtle's copyright in the Reversible Octopus Plushies and Tee Turtle's ownership of those rights.   Defendant does not dispute that the registration is valid, subsisting, and owned by Tee Turtle.

4.     Tee Turtle's Reversible Octopus Plushies have a distinctive design comprised of a generally spherical-shaped body, tentacles protruding from the spherical body, and are reversible from one configuration to a second configuration. Each configuration has different features, such as a different color, pattern, or texture fabric, and a different facial expression.   These distinctive features are non-functional components of Tee Turtle's Reversible Octopus Plushies.

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -4

5.      Tee Turtle markets its Reversible Octopus Plushies on its own website, on social media, on Amazon.com, and other online outlets.  (Badie Decl. ¶ 5.) Additionally, Tee Turtle's Reversible Octopus Plushies are sold in "brick and mortar" stores across the country.  (*Id*. ¶ 8.)

6.      Tee Turtle has developed a wide network of loyal fans, with over 971,000 followers and 976,000 page "likes" on Facebook and over 227,000 followers on Instagram.  (*Id*. ¶ 5.)

7.      Tee Turtle's social media advertising reaches thousands of consumers with each post.  For example, Tee Turtle posted an advertisement promoting the Reversible Octopus Plushies on Instagram on January 28, 2021 and the video received approximately 10,000 views in only two days.  Links to these posts are available    and    found    at    https://www.instagram.com/p/BXhM4vRDQN4/, https://www.instagram.com/p/BXfualjDMw6/, and https://www.instagram.com/p/CKmNCQUr7Qo/.  (*Id*. ¶ 6.)

8.      A similar video posted on Facebook in 2017 now has over 1.2    million    views.    The    video    can    be    found    at https://www.facebook.com/teeturtle/videos/1734790543238703.  (*Id*. ¶ 7.)

9.      Before the global pandemic, Tee Turtle regularly attended trade shows and conventions to promote the Reversible Octopus Plushies.  (*Id*. ¶ 8.)  In 2018 and again in 2019, Tee Turtle attended over 180 conventions across the country,

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -5

including New York Comic Con and Denver Comic Con. (*Id*.) At the trade shows, Tee Turtle sold products, including Reversible Octopus Plushies from its own kiosks. (*Id*.)

10.    Earlier this year, the Reversible Octopus Plushies were the number one bestselling toy on Amazon.com in several categories, including Stuffed Animals & Plush Toys, Preschool Toys, and Amazon Launchpad Toys. (*Id*. ¶ 9.) Further, the Reversible Octopus Plushies were the number one bestselling product among all Toys & Games sold on Amazon.com as late as February 26, 2021. (*Id*.)

11.    On Amazon.com, the Reversible Octopus Plushies have a 4.8 out of 5 star rating with over 13,800 reviews. (*Id*. ¶ 10.) Many of the reviews specifically connect the Reversible Octopus Plushies with Tee Turtle's social media marketing. (*Id*.)

12.    The Reversible Octopus Plushies have also been featured in unsolicited media. The Reversible Octopus Plushies are the subject of several "viral" TikTok videos, with each video reaching hundreds of thousands of consumers and potential consumers. (*Id*. ¶ 11.) A May 2020 TikTok video featuring the Reversible Octopus Plushies now has over 1.1 million likes and 7.8 million views. The video can be found at Girlfriends mood #teeturtle #octopus #cute #verycute #animalcrossing #cutie #girlfriend #mood #inamood #timeofmonth #chocolate #fyp #xyzcba #cbzzyz #t (tiktok.com). (*Id*.)

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -6**

13.    A similar TikTok video posted in October 2020 now has over 580,000 likes and 3.9 million views. (*Id*. ¶ 12.) The video is available at https://www.tiktok.com/foryou?lang=en&is_copy_url=1&is_from_webapp=v1#/ @itslaaurr/video/6880669722862456069. (*Id*.)

14.    Consumers associate the viral TikTok trends with Tee Turtle. For example, several consumers have left reviews on Amazon indicating that they purchased Tee Turtle's Reversible Octopus Plushies because they saw them trending on TikTok. (ECF No. 1 at ¶ 30; Badie Decl. ¶ 13.)

15.    The Reversible Octopus Plushies have also been featured in more traditional media channels, such as in articles posted by *Forbes*, *Newsweek.com*, *USA Today*, *Elite Daily*, and *Yahoo! Life*. (ECF No. 1 at ¶¶ 31-35, Exs. C-G; Badie Decl. ¶ 14.)

16.    Tee Turtle's marketing also ties the viral TikTok videos to its Reversible Octopus Plushies. For example, on Tee Turtle's website, the description of the Reversible Octopus Plushies includes a notice that the toy is "The Original Reversible Octopus Plushie! As seen on TikTok!" (Badie Decl. ¶ 15.) Similarly, Tee Turtle's description of its Reversible Octopus Plushies on its Amazon.com listing prominently includes "As seen on TikTok!" (*Id.*; EFC No. 1 at ¶ 28.)

17.    To date, Tee Turtle has sold hundreds of thousands of Reversible Plushies, including 364,591 in 2020. (Badie Decl. ¶ 17.) In January 2021 alone,

1  Tee Turtle sold over 100,000 Reversible Plushies and generated over $1 million in

2  revenue for this single product.  (*Id.*)

3      **B.  Defendant's Moody Octopus Infringing Plushies**

4      18.    Defendant has been displaying, distributing, marketing, and selling

5  reversible plush octopus toys that are virtually identical copies of Tee Turtle's

6  Reversible Octopus Plushies (the "Moody Octopus Infringing Plushies").  (*See id.*

7  ¶ 18.)  A comparison of the two products is below:

| Defendant's Moody Octopus Infringing Plushies | Tee Turtle's Reversible Octopus Plushies |
|---|---|
|  |  |

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -8**

19.    Defendant sells its Moody Octopus Infringing Plushies from a kiosk in the Northtown Mall in Spokane, Washington, and from a kiosk in the Spokane Valley Mall in Spokane Valley, Washington.  Defendant's kiosks include signage indicating that Defendant's Moody Octopus Infringing Plushies are the reversible octopus toys "as seen on TikTok," which was intended to create an association with Tee Turtle's Reversible Octopus Plushies.

20.    Defendant has displayed and distributed its Moody Octopus Infringing Plushies, which are virtually identical to and strikingly similar copies of Tee Turtle's protected design embodied by Tee Turtle's Reversible Octopus Plushies.

21.    Defendant has also made unauthorized use of Tee Turtle's trade dress. Defendant's Moody Octopus Infringing Plushies are virtually identical to Tee Turtle's trade dress.  Defendant's Moody Octopus Infringing Plushies are marketed in a similar way as Tee Turtle's Reversible Octopus Plushies, including by denoting their products "as seen on TikTok."  (Badie Decl. ¶ 20.)

22.    The parties stipulated that some of Defendant's customers who purchased Defendant's Moody Octopus Infringing Plushies believed they were purchasing Tee Turtle's Reversible Octopus Plushies.

23.    Tee Turtle has not authorized or given permission for Defendant to copy, display, advertise, or sell in commerce the Moody Octopus Infringing Plushies. (*Id.* ¶ 19.)

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -9**

1
2

## IV.    CONCLUSIONS SUPPORTING THE ISSUANCE OF A PERMANENT INJUNCTION

3
4

24.    Tee Turtle has a valid and subsisting copyright in the Reversible Octopus Plushies.

5
6

25.    Defendant's Moody Octopus Infringing Plushies copy protectable elements of Tee Turtle's copyrighted Reversible Octopus Plushies.

7
8
9

26.    Defendant's public display and distribution of the Moody Octopus Infringing Plushies constitutes infringement of Tee Turtle's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

10
11
12
13
14
15
16

27.    As a result of: (a) Tee Turtle's continuous use of its trade dress since 2017; (b) Tee Turtle's extensive marketing efforts; (c) social media and other online videos that connect Tee Turtle with the Reversible Octopus Plushies; (d) millions of consumer impressions of those videos; (e) actual confusion among consumers of Defendant's Moody Octopus Infringing Plushies; and (f) the substantial commercial success of the Reversible Octopus Plushies, the Reversible Octopus Plushies have achieved acquired distinctiveness in the marketplace.

17
18

28.    Consequently, Tee Turtle has protectable trade dress rights in the overall appearance of the Reversible Octopus Plushies.

19
20

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -10

29.     Defendant's Moody Octopus Infringing Plushies are virtually identical to Tee Turtle's trade dress and create a likelihood of confusion between Defendant's Moody Octopus Infringing Plushies and Tee Turtle's Reversible Octopus Plushies.

30.     Tee Turtle is entitled to injunctive relief under 17 U.S.C. § 502 and 15 U.S.C. § 1116.

31.     Tee Turtle is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation or likely violation of the Lanham Act pursuant to 15 U.S.C. § 1116(a).

32.     A permanent injunction is necessary to protect Tee Turtle's interests in its copyright and trade dress rights and to prevent Defendant from marketing his Moody Octopus Infringing Plushies that copy Tee Turtle's copyright or are confusingly similar to Tee Turtle's trade dress.

33.     Without an injunction, Tee Turtle would suffer harm to its goodwill and face unfair competition from unauthorized copies of its Reversible Octopus Plushies. Further, without an injunction, consumers will likely be confused or deceived with respect to Defendant's Moody Octopus Infringing Plushies.  Thus, the public interest is served by a permanent injunction because it will help protect against future consumer confusion and deception.

34.     There are no just reasons to delay entry of this permanent injunction. Tee Turtle has met the factors for determining whether to issue a permanent

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -11**

injection and the terms of the injunction set forth below are reasonable under these facts and circumstances.

## V.    ORDER

**IT IS HEREBY ORDERED** as follows:

**A.**    The pending motions are **GRANTED**.  The Clerk of Court shall enter Judgment in favor of Tee Turtle on its claims against Defendant with respect to the Moody Octopus Infringing Plushies.

**B.**    Each party has waived the right to appeal from this Permanent Injunction Order and Final Judgment, and each party will bear its own fees and costs in connection with this action.  Tee Turtle hereby relinquishes claims for monetary relief it may have against Defendant based on the conduct described in Section III.B. herein.

**C.**    Pursuant to Fed. R. Civ. P. 65, Defendant and his agents, servants and employees, and all persons in active concert or participation with him are hereby permanently enjoined from:

1.    Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, displaying, advertising or promoting the Moody Octopus Infringing Plushies sold by Defendant at his kiosk in the Northtown Mall in Spokane, Washington, and his kiosk in the Spokane Valley Mall in Spokane Valley, Washington;

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER -12**

2.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, displaying, advertising or promoting any products that have a design that is substantially similar to Tee Turtle's Reversible Octopus Plushies as reflected in the copyrighted work registered under Registration Number VA 2-103-871;

3.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, displaying, advertising or promoting any products that are confusingly similar to Tee Turtle's trade dress embodied in the Reversible Octopus Plushies;

4.      Filing an application with the U.S. Copyright Office to register a copyright in any work that is substantially similar to Tee Turtle's Reversible Octopus Plushies;

5.      Filing an application with the United States Patent & Trademark Office to register any trade dress that is confusingly similar to Tee Turtle's trade dress in the Reversible Octopus Plushie;

6.      Assisting, aiding, or abetting any person or entity engaging in or performing any act prohibited by paragraphs C (1)-(5) of this Order.

**D.**      Within ten (10) days after this Court enters this Permanent Injunction Order and Final Judgment, Defendant shall (at Tee Turtle's election) destroy or

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -13

surrender to Tee Turtle for destruction Defendant's remaining inventory of the Moody Octopus Infringing Plushies.

      **E.**    Within ten (10) days after this Court enters this Permanent Injunction Order and Final Judgment, Defendant shall disclose to Tee Turtle (either in a sworn declaration or through a deposition at Tee Turtle's election) information sufficient to identify:  (1) Defendant's supplier(s) of the Moody Octopus Infringing Plushies; and (2) the quantity of Moody Octopus Infringing Plushies purchased by Defendant from the supplier(s).

      **F.**    This Court shall retain jurisdiction for the purpose of making any further orders necessary and proper for the construction or modification of this Permanent Injunction Order and Final Judgment, the enforcement thereof, and/or the punishment for any violations thereof.

      **G.**    This Stipulated Judgment applies to and binds all parties who are in active concert or participation with Defendant as provided in Fed. R. Civ. P. 65(d). Defendant waives any objection under Fed. R. Civ. P. 65.

      **H.**    After entry of Judgment, the Clerk of Court shall **CLOSE** the file.

DATED March 9, 2021.



_____
Thomas O. Rice
United States District Judge

**PERMANENT INJUNCTION AND FINAL JUDGMENT ORDER** -14